IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

DARALYN ANNE B.[1],                                    No. 1:18-cv-02146-HZ

                    Plaintiff,

        v.

COMMISSIONER, SOCIAL                          OPINION & ORDER
SECURITY ADMINISTRATION,

                    Defendant.

Brent Wells
HARDER, WELLS, BARON & MANNING, P.C.
474 Willamette Street
Eugene, Oregon 97401

        Attorney for Plaintiff

Billy J. Williams
UNITED STATES ATTORNEY
District of Oregon

─────────────────────

        [1]  In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case.  Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 - OPINION & ORDER

Renata Gowie
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2936

Franco L. Becia
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

     Attorneys for Defendant

HERNANDEZ, District Judge:

     Plaintiff Daralyn B., brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits (DIB) and disabled widow's benefits (DWB). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) . I reverse the Commissioner's decision and remand for additional proceedings.

## PROCEDURAL BACKGROUND

     Plaintiff applied for DIB and DWB on August 31, 2015, alleging an onset date of March 1, 2013. Tr. 209-23. Her applications were denied initially and on reconsideration. Tr. 59-82, 112-21; Tr. 83-110, 130-35. On November 27, 2017, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 29-58. On March 6, 2018, the ALJ found Plaintiff not disabled. Tr. 10-28. The Appeals Council denied review. Tr. 1-5.

## FACTUAL BACKGROUND

     Plaintiff alleges disability based on having chronic obstructive pulmonary disease (COPD), congestive heart failure, back pain, "Afib," type 2 diabetes, and memory lapse. Tr. 237. At the time of the hearing, she was fifty-nine years old. Tr. 35. She is a high school graduate

2 - OPINION & ORDER

and has past relevant work experience as a reports analyst and a user support analyst. Tr. 22, 35, 245-58.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act (SSA) through March 31, 2017, that she met the non-disability requirements for DWB, and that she had not engaged in substantial gainful activity since her alleged onset date of March 1, 2013. Tr. 15-16 Next, at step two, the ALJ determined that Plaintiff has severe impairments of COPD, atrial fibrillation, degenerative disc disease of the spine, and obesity. Tr. 16-18. At step three, however, the ALJ determined that her impairments did not meet or equal, either singly or in combination, a listed impairment. Tr. 18.

At step four, the ALJ concluded that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with the following limitations: (1) she can occasionally climb ramps and stairs but never ladders, ropes, or scaffolds; (2) she can frequently balance; (3) she can occasionally stoop, kneel, crouch, and crawl; (4) she should avoid concentrated exposure to extreme cold, fumes, odors, dusts, gases, and poorly ventilated areas; and (5) she should avoid

even moderate exposure to hazardous machinery and unprotected heights.  Tr. 18-19.  With this

RFC, the ALJ determined that Plaintiff is able to perform her past relevant work as a report

analyst and as a user support analyst.  Tr. 22-23.  The ALJ then determined that Plaintiff is not

disabled.  Tr. 23.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the

Commissioner's findings "are based on legal error or are not supported by substantial evidence in

the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation

marks omitted).  "Substantial evidence means more than a mere scintilla but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Id.* (internal quotation marks omitted).  The court considers the record as

a whole, including both the evidence that supports and detracts from the Commissioner's

decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).  "Where the evidence

is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed."

*Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v.

Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either

a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal

quotation marks omitted).

## DISCUSSION

Plaintiff argues that the ALJ erred by (1) finding her subjective limitations testimony not

fully credible; (2) rejecting the opinion of examining psychologist Michael O'Connell, Ph.D; (3)

failing to find her somatic symptom disorder a severe impairment at step two; (4) improperly

rejecting the testimony of a lay witness; and (5) as a result of those errors, failing to properly assess her RFC.

I.  Credibility

The ALJ is responsible for determining credibility.  *See Vasquez*, 572 F.3d at 591.  Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering.  *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'"); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (ALJ engages in two-step analysis to determine credibility:  First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (internal quotation marks omitted).

When determining the credibility of a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the plaintiff's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence.  *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).  The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed

medications, and the unexplained absence of treatment for excessive pain. *Id.*; *see also*

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider many factors

in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation,

such as the claimant's reputation for lying, prior inconsistent statements concerning the

symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or

inadequately explained failure to seek treatment or to follow a prescribed course of treatment;

and (3) the claimant's daily activities.") (internal quotation marks omitted).

As the Ninth Circuit explained in *Molina*:

> In evaluating the claimant's testimony, the ALJ may use ordinary techniques of
> credibility evaluation. For instance, the ALJ may consider inconsistencies either
> in the claimant's testimony or between the testimony and the claimant's conduct,
> unexplained or inadequately explained failure to seek treatment or to follow a
> prescribed course of treatment, and whether the claimant engages in daily
> activities inconsistent with the alleged symptoms[.] While a claimant need not
> vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit
> a claimant's testimony when the claimant reports participation in everyday
> activities indicating capacities that are transferable to a work setting[.] Even
> where those activities suggest some difficulty functioning, they may be grounds
> for discrediting the claimant's testimony to the extent that they contradict claims
> of a totally debilitating impairment.

*Molina*, 674 F.3d at 1112-13 (citations and internal quotation marks omitted).

The ALJ recited the correct two-step analysis. Tr. 19. The ALJ summarized Plaintiff's

subjective symptom testimony presented in her Disability Reports and at the hearing. *Id.* (citing

Tr. 236-44, 277-84) (noting that in her Disability Reports, she alleged an inability to walk any

distance over a block without severe back pain, fatigue, and labored breathing and then alleging,

in her request for reconsideration, worsening symptoms including back pain radiating to both

hips and memory fading). The ALJ described that at the hearing, Plaintiff testified that she was

fired from her last job because of her inability to perform as a result of memory problems which caused her to make mistakes and impeded her performance speed. *Id.* She applied for other work but did not get an offer to interview. *Id.* She testified to pain in her lower back and between her shoulder blades extending down into her hip, making it hard to concentrate and requiring her to constantly shift her position. *Id.* She described having "dizzy issues and loss of balance." *Id.* The ALJ further noted Plaintiff's testimony that she takes hydrocodone for her back pain, about once or twice per week, but that most of the time she treats the back pain with a heat pack and an ice pack. *Id.* She uses a mobile cart for grocery shopping. *Id.* She uses the dishwasher, prepares mostly microwave meals, and on a good day, she can dust. *Id.* Her neighbor helps her with the floors and she has help for the yard. Tr. 20. Plaintiff also testified that about two to three months before the hearing, she began taking medication for depression which has helped "a little," but she had had no counseling. *Id.* Due to certain side effects, she had recently switched to a new depression medication. *Id.*

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id.* The ALJ first noted that Plaintiff's subjective statements were inconsistent with her mainly conservative treatment for her back pain and COPD. *Id.* Additionally, her treatment records suggested that her atrial fibrillation was adequately controlled with medication. *Id.* As to the back pain, the ALJ noted that physical therapy, not surgery, had been recommended. *Id.* Additionally, at one point, Plaintiff reported that the physical therapy made her pain worse but she still rarely took pain medication. *Id.* In

July 2017, her treatment plan was to continue with home exercises and weight loss. *Id.* She received a refill for pain medication with twenty pills expected to last at least two months. *Id.*

Next, the ALJ noted that while Plaintiff had been offered a consult for injections, she did not want it at the time. *Id.* Further, the ALJ cited to mild to moderate findings in objective imaging studies. *Id.* (describing May 2015 x-rays showing mild discogenic and facet degenerative spondylosis most located to the C5-C6 level and lumbar spine x-ray showing mild to moderate multilevel discogenic and facet degenerative spondylosis) (citing Tr. 763-64). The ALJ further summarized medical records regarding her COPD and atrial fibrillation. Tr. 20-21. Then, towards the end of the RFC step-four discussion, the ALJ repeated his finding that while Plaintiff's testimony focused on her pain, she utilized mostly conservative treatment of heat and ice and took pain medication only once or twice per week. Tr. 22. He noted that she had declined further treatment of physical therapy and pain management. *Id.* Her atrial fibrillation was controlled and she had not had frequent in-patient hospitalizations for her pulmonary condition. *Id.*

Plaintiff contends that the ALJ failed to set forth clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's subjective symptom testimony. Plaintiff argues that the given the nature of her somatic symptom disorder, some inconsistencies with the organic medical evidence would be expected. In fact, she contends, her testimony is consistent with such a diagnosis. She concedes that surgery has not been recommended, but, she adds, some of the physical therapy had made her pain worse and she was following her physical therapist's recommendation against doing those movements. She further argues that hydrocodone is highly addictive and she does not like to take it because it adds to her concentration problems. In her

Reply Brief, Plaintiff suggests that the ALJ erred in his credibility determination by failing to recognize that her pain and fatigue symptoms arise from a psychological source. Pl.'s Reply 2, ECF 15.

Defendant responds to Plaintiff's credibility arguments by pointing to the ALJ's reasons, including the lack of support in the objective medical imaging records, Plaintiff's conservative treatment, and Plaintiff's failure to pursue all recommended treatment options. Def.'s Br. 7-8, ECF 14. Defendant further summarizes the evidence and ALJ reasoning in regard to Plaintiff's COPD and atrial fibrillation. *Id.* at 8-10. Defendant additionally points to inconsistencies between Plaintiff's alleged limitations and her activities of daily living. *Id.* at 11.

The ALJ provided sufficient, clear and convincing reasons to reject Plaintiff's subjective limitations testimony. "[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (internal quotation marks omitted). It is undisputed that surgery has not been recommended for Plaintiff's back pain. She relies primarily on heat and ice and over-the-counter medication. *E.g.,* Tr. 492 (uses moist heat and takes Alleve). While she takes hydrocodone, she does so infrequently. *E.g.,* Tr. 654 (twenty pills lasted six months; next prescription expected to last at least two months).

Additionally, an unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment can be a basis to discount a claimant's symptom testimony. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). While Plaintiff justifies her failure to pursue recommended physical therapy because some of the exercises caused pain and her physical therapist advised against performing those exercises, she provides no explanation for her

failure to pursue injections to treat her back pain.  She contends that this single reason is "weak," arguing that by itself, it cannot provide the basis for rejecting her testimony.  Pl.'s Reply. 4.  I disagree that this is the only reason provided by the ALJ and given that it is supported by the record, I do not find it "weak."  Plaintiff also fails to explain why she does not continue with the physical therapy exercises that do not produce pain.

I agree with Plaintiff, however, that the ALJ did not clearly articulate an inconsistency with Plaintiff's activities of daily living as a basis to find her subjective testimony not credible. Defendant is correct that the ALJ noted some of Plaintiff's activities "[w]ithin the decision." Def.'s Br. 11.  But, the ALJ did not specifically rely on any daily living activity in discounting Plaintiff's allegations.  As such, I do not consider that argument.

Finally, the ALJ may consider objective medical evidence in determining a claimant's credibility regarding subjective symptom testimony, as long as the ALJ does not reject such testimony solely because it is unsubstantiated by the objective medical evidence.  20 C.F.R. § 404.1529(c); *Rollins v. Massanari* 261 F.3d 853, 856, 857 (9th Cir. 2001) ("Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain[;] . . .  While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (internal quotation marks and brackets omitted).  Because the ALJ did not rely solely on the objective medical evidence, it was not error to cite to the mild to moderate findings in the imaging studies to support his credibility determination.

The ALJ properly relied on undisputed evidence in the record that despite alleging severely disabling functional limitations caused by pain, Plaintiff relied primarily on conservative treatment and failed to follow recommended treatment in the form of injections. Even if it is assumed that Plaintiff's pain is caused by a mental impairment rather than a physical one and thus, inconsistencies with the objective medical record should not be considered, the ALJ still provided two clear and convincing reasons supported by substantial evidence in the record in support of his negative credibility determination. The ALJ did not err.

II. Examining Psychologist

Plaintiff was examined by Michael O'Connell, Ph.D., on February 24, 2016. Tr. 492-98. He reviewed a single medical record and performed a mental status examination. *Id.* Based on his examination, Dr. O'Connell's diagnostic impression was somatic symptom disorder with predominant pain, persistent, moderate. Tr. 498. Based on this impression, Dr. O'Connell wrote:

> Based on the available evidence, one would conclude that Dara is capable of understanding and remembering typical workplace instructions. She reports a range of somatic complaints (including chronic pain), which may impact her ability to function in a work setting. For example, high levels of pain may affect her ability to concentrate effectively. Medical opinion should provide information regarding the degree to which organic findings appear consistent with Dara's reported level of functional impairment.
>
> The results of the current assessment appear consistent with other information reviewed as part of this evaluation.

*Id.*.

Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not

actually treat the claimant. *Id.*; 20 C.F.R. § 404.1527(c)(1)-(2). And, more weight is given to an examining physician than to a nonexamining physician. *Garrison*, 759 F.3d at 1012. "'To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.'" *Ryan v. Comm'r*, 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)) (brackets in *Ryan*). "'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" *Garrison*, 759 F.3d at 1012 (quoting *Ryan*, 528 F.3d at 1198).

The ALJ summarized Dr. O'Connell's report. Tr. 17-18. The ALJ remarked that the report stated that Plaintiff had received no mental health treatment previously, was cooperative and demonstrated adequate social skills, had a linear and coherent thought process, and had fair judgment and average intellectual functioning. Tr. 17. The ALJ further noted Dr. O'Connell's observation that Plaintiff had problems with computing basic multiplication and division, but was able to make change and do other simple money calculations, was able to count backwards from 20 to 1, and was able to complete serial sevens without error. *Id.* Further, Dr. O'Connell found no indication of a deficit in immediate recall or long term memory, and found Plaintiff's short-term memory function to be intact. Tr. 17-18.

After summarizing the report, the ALJ then summarized Dr. O'Connell's opinion. Tr. 18. The ALJ afforded that opinion "little weight" because it was "not consistent with the record as a whole." *Id.* The ALJ also noted that the opinion was based on a "range of somatic complaints of the claimant and merely stated they 'may' affect her functional abilities." *Id.*. The ALJ repeated

that the "record as a whole does not support mental functioning limitations."  *Id.*

Plaintiff argues that the ALJ erred in his treatment of Dr. O'Connell's opinion because he failed to consider the opinion under the appropriate factors and failed to identify either clear and convincing or specific and legitimate bases supported by substantial evidence in the record in rejecting the opinion.  Plaintiff further argues that Dr. O'Connell's opinion is, in fact, supported by the record because it is consistent with records from examining orthopedist Dr. Glen S. Sullivan, M.D., who noted, in regard to the review of neurological systems, that Plaintiff reported numbness and tingling with changes in memory and concentration.  Tr. 501.

In response, Defendant suggests that the ALJ rejected Dr. O'Connell's opinion because it conflicted with his own clinical notes and observations.  Def.'s Br. 13.  Dr. O'Connell's report does indicate that Plaintiff had no memory problems and was able to concentrate well enough to adequately perform a variety of tests with satisfactory results.  But, the ALJ himself did *not* rely on any inconsistency between Dr. O'Connell's findings and his opinion as a basis for rejecting that opinion.  As a result, this Court may not consider that argument.  *Trevizo v. Comm'r*, 871 F.3d 664, 677 n.4 (9th Cir. 2017) (district court erred in looking beyond ALJ's stated reasons and explanation to support ALJ's opinion); *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (court cannot affirm the agency on a ground not invoked by the ALJ without violating the *Chenery* rule) (citing *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (stating that a reviewing court may affirm agency action only on "the grounds invoked by the agency")); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (district court may not make its own independent findings, and is "constrained to review the reasons the ALJ asserts.").

Next, Defendant argues that the ALJ did not need to more specifically discuss Dr.

O'Connell's opinion because the opinion was only a speculative statement which provided no significant and probative evidence about the existence or scope of Plaintiff's impairment. Def.'s Br. 14 (citing *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ does not need to discuss all evidence presented but must explain only why "significant probative evidence" has been rejected); *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (ALJ has duty to further develop the record only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence)).

I disagree with Defendant. The medical opinion regulations which apply to claims filed before March 27, 2017, require the ALJ to consider and explain the weight afforded to every medical opinion applying certain factors. 20 C.F.R. § 404.1527(b) ("we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive"); § 404.1527(c) (setting forth the following factors to be used in weighing a medical opinion: the nature of the examining relationship; whether it was a treating practitioner; the length of the relationship; the nature and extent of the treatment relationship; the supportability of the opinion in terms of medical signs, laboratory findings, and explanation provided; the consistency of the opinion with the record as a whole; the specialization of the practitioner; and any other factors). The ALJ's failure to more specifically consider the opinion and discuss the relevant factors is error. *Trevizo*, 871 F.3d at 676 (ALJ's failure to apply the appropriate factors in determining the extent to which the medical opinion should be credited "alone constitutes reversible legal error").

Additionally, the ALJ's general statement that Dr. O'Connell's opinion is inconsistent with the record as a whole does not provide sufficient specificity to allow the Court to determine the validity of the ALJ's treatment of the opinion. The ALJ must offer "specific" reasons and errs by

rejecting a medical opinion "while doing nothing more than . . . criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison*, 759 F.3d at 1013; *see also Kennedy v. Comm'r*, No. 6:17-cv-00988-HZ, 2018 WL 2724055, at *14 (D. Or. June 6, 2018) ("An ALJ's assertion that a medical opinion is inconsistent with unspecified 'treatment records' and unidentified evidence in 'the record as a whole' is not specific enough to satisfy the less demanding standards that apply to contradicted opinions of a treating physician").

Because the ALJ offered insufficient reasons for giving Dr. O'Connell's opinion "little weight," the ALJ erred.

## III.  Step Two

Plaintiff argues that the ALJ erred by failing to find her somatic pain disorder a severe impairment at step two.  She first argues that the ALJ erred as matter of law because he examined the incorrect functional areas.  Second, she contends that the ALJ erred by relying on the opinions of non-examining state agency psychological consultants and simultaneously giving little weight to Dr. O'Connell's opinion.  Third, she argues that the ALJ erred by failing to account for her symptoms related to her limitations arising from her somatic pain.  Plaintiff argues that the ALJ's step-two error is not harmless as the ALJ did not otherwise account for her symptoms in the RFC.

The ALJ considers the severity of the claimant's impairment(s) at step two.  20 C.F.R. § 404.1520(a)(4)(ii).  A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).  "Basic work activities" are the "abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, and lifting, and mental functions such as understanding, carrying out,

and remembering simple instructions. 20 C.F.R. § 404.1522(b). In Social Security Ruling (SSR) 85-28 (available at 1985 WL 56856, at *3), the Commissioner has explained that an impairment "is not severe" if it has "no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities[;]" *see also* SSR 96-3p, available at 1996 WL 374181, at *1 ("an impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.").

At step two, the ALJ concluded that Plaintiff's medically determinable mental impairments of somatic symptom disorder and depression, considered singly or in combination, did not cause more than minimal limitation in her ability perform basic mental work activities. Tr. 16. Therefore, they were not severe.[2] The ALJ stated that in making this finding, he had considered the four broad areas of mental functioning, known as the "paragraph B" criteria used to evaluate mental disorders. *Id.* He then assessed each of the four functional areas: (1) "understanding, remembering, or applying information"; (2) "interacting with others"; (3) "concentrating, persisting, or maintaining pace"; and (4) "adapting or managing oneself." Tr. 16-17. In each area he discussed the evidence he found relevant and concluded that Plaintiff was not limited in that area. *Id.* He also found that the non-examining psychological consultant opinions were consistent with the record as a whole including the lack of formal mental health treatment and Plaintiff's activities of daily living. Tr. 17. Those opinions were also consistent with the treatment records including notes that she declined medication therapy for her chronic pain with depressed mood in January 2017. *Id.* He next addressed Dr. O'Connell's opinion, discussed

---

[2] Plaintiff does not challenge this finding as to her depression.

above.

Finally, still at step two, the ALJ rejected any alleged impairment of memory deficit because the medical evidence of record found that her short term memory was intact with no indication of a deficit in immediate recall or long-term memory. Tr. 18. Thus, there was a lack of objective evidence to substantiate the existence of a medically determinable impairment of memory deficits. *Id.*

In response to Plaintiff's arguments, Defendant contends that the ALJ evaluated Plaintiff's activities at every stage of the B criteria analysis. Def.'s Br. 17 n.6. Defendant also contends that the step-two finding is supported by substantial evidence because the ALJ properly disregarded Dr. O'Connell's opinion, which failed to offer a specific limitation in any event, and Plaintiff has no other credible evidence that she was significantly limited by a mental impairment that lasted for more than twelve continuous months. And, Defendant notes, the ALJ properly found Plaintiff's subjective complaints to be not entirely consistent with the evidence of record.

Under the applicable regulations[3], ALJs are guided in their evaluation of mental

---

[3] The applicable regulations are those in effect at the time the ALJ issued his decision. *See Garrett ex rel. Moore v. Barnhart*, 366 F.3d 643, 647 (8th Cir. 2004) ("We apply the rules that were in effect at the time the Commissioner's decision became final."); *Lowry v. Astrue*, 474 F. App'x 801, 804 n.2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment); *Spencer v. Colvin*, No. 15-05925, 2016 WL 7046848, at *9 n.4 (W.D. Wash. Dec. 1, 2016) ("42 U.S.C. § 405 does not contain any express authorization from Congress allowing the Commissioner to engage in retroactive rulemaking"); *see also Lord v. Berryhill*, No. 6:17-cv-00255-SI, 2018 WL 1811472, at *9 n.3 (D. Or. Apr. 16, 2018) (explaining that the plaintiff's apparent concession that the regulations in effect at the time of the ALJ's decision apply, comported with the Commissioner's instructions that "'[w]ith respect to claims in which we have made a final decision, and that are pending judicial review in federal court, we expect that the court's review of the Commissioner's final decision would be made in accordance with the rules in effect at the time of the final decision.'" (quoting 66 Fed. Reg. 58010-01, 58011 (Nov. 19, 2001)).

impairments by the steps contained in 20 C.F.R. § 404.1520a. The steps are designed to help

ALJs assess the severity of a mental impairment at step two, and further, whether such an

impairment meets or equals a listed impairment at step three. 20 C.F.R. § 404.1520a; *see also*

*Manos v. Colvin*, No. 3:13-cv-01419-PK, 2015 WL 1345454, at *7 (D. Or. Mar. 23, 2015) ("The

steps set forth in 20 C.F.R. § 404.1520a are employed by ALJs at step two of the five-step

evaluation process to assess whether a mental impairment is severe, and whether such an

impairment meets or equals a listed impairment at step three"). Each listed diagnosis consists of

"paragraph A" criteria addressing clinical findings, and "paragraph B" criteria addressing

functional limitations. *See Manos*, 2015 WL 1345454, at *8. As to the functional limitations,

the regulations require that an ALJ "rate the degree of functional limitation resulting from the

impairment." 20 C.F.R. § 404.1520a(b)(2). The regulations identify four "functional areas" that

are to be rated: (a) understand, remember or apply information; (2) interact with others; (3)

concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. §

404.1520a(c)(3). After the degree of functional limitation resulting from the impairment is rated

for each category, the severity of the mental impairment is determined. 20 C.F.R. §

404.1520a(d).

 Here, the ALJ used the correct four functional areas to assess the severity of Plaintiff's

mental impairments. Therefore, his step-two finding was based on the correct law.

 Nonetheless, I agree with Plaintiff that the step-two finding was in error. In reaching his

step-two determination, the ALJ relied, at least in part, on his rejection of Dr. O'Connell's

opinion. Because the ALJ's rejection of Dr. O'Connell's opinion was error, the ALJ's step-two

determination cannot be upheld. I further agree with Plaintiff that the ALJ's step-two error is not

harmless.  The RFC contains no mental impairment limitations.  Therefore, it appears that the ALJ did not account for any mental impairment functional deficits in his disability determination.  Accordingly, the ALJ erred.

IV.  Lay Witness

Plaintiff's friend and neighbor Debra Jenkins submitted written lay witness testimony in a Third-Party Function Report.  Tr. 267-74.  The ALJ gave only "some weight" to her testimony because her statements were repetitive of the subjective statements made by Plaintiff herself and because they were not made by a medical professional.  Tr. 22 (further explaining that as a lay witness, Jenkins was "not competent to make a diagnosis or argue the severity of Plaintiff's symptoms in relationship to Plaintiff's ability to work.").  Nonetheless, the ALJ explained, the witness's statements did provide "some limited additional insight into [Plaintiff's] activities of daily living.  *Id.*  "Accordingly," the ALJ wrote, he "afforded some weight to the statements of the claimant's friend[] to the extent the statements are consistent with the determination herein." *Id.*

Plaintiff argues that the ALJ erred by giving only "some weight" to Jenkins's testimony because it is competent evidence which corroborates Plaintiff's testimony and is consistent with Dr. O'Connell's and Dr. Sullivan's medical evidence.  Additionally, she contends that a lack of support from medical records is not a reason germane to the witness to give little weight to lay witness observations.

"Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account."  *Molina*, 674 F.3d at 1114.  The ALJ must give reasons "germane to the witness" when discounting the testimony of

lay witnesses.  *Valentine*, 574 F.3d at 694.

To the extent the ALJ rejected Jenkins's testimony because she was not a medical professional, this was error.  *See Bruce v. Astrue*, 557 F.3d 1113, 1116 & n.1 (9th Cir. 2009) (improper for ALJ to reject claimant's wife's testimony because witness was not knowledgeable in the medical or vocational fields); *Agatucci v. Colvin*, No. 6:13-cv-01626-MC, 2015 WL 1467209, at *10 (D. Or. Mar. 30, 2015) (lay witness's lack of medical training is not a germane reason to reject that witness's testimony), *aff'd sub nom. Agatucci v. Berryhill*, 721 F. App'x 614 (9th Cir. 2017); *Sims v. Astrue*, No. 3:10–CV–1040–HA, 2012 WL 364055, at *6 (D. Or. Feb. 2, 2012) (improper to reject lay witness opinion because witness lacked expertise).  While it is correct to state that a lay witness cannot diagnosis an impairment, Jenkins's report contains no diagnoses and offers only a couple of references to Plaintiff's symptoms, as observed by Jenkins, being caused by back pain or shortness of breath.  Thus, the ALJ erred in rejecting Jenkins's testimony on this basis.

Nonetheless, the ALJ's observation that Jenkins's testimony was largely repetitive of the statements made by Plaintiff regarding her limitations, is supported and not disputed.  Because the ALJ did not err in rejecting Plaintiff's subjective testimony, he may rely on the reasons he provided in support of that rejection, to reject Jenkins's testimony.  *Molina*, 674 F.3d at 1114, 1117, 1122 (if the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness; and where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay

testimony is harmless).  Thus, the ALJ did not err in giving only "some weight" to the lay witness testimony.

V.  Remand for Additional Proceedings

In social security cases, remands may be for additional proceedings or for an award of benefits.  *E.g., Garrison*, 759 F.3d at 1019 (explaining that if "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded[,]" but "in appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits") (internal quotation marks omitted).

To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Id.* at 1020; *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (2014) ("credit-as-true" rule has three steps).  First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.  *Garrison*, 759 F.3d at 1020.  Second, the record must be fully developed and further administrative proceedings would serve no useful purpose. *Id.*  Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled.  *Id.*  To remand for an award of benefits, each part must be satisfied.  *Id.; see also Treichler*, 775 F.3d at 1101 (when all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule" of remanding to the agency).

The ALJ provided legally insufficient reasons in support of his step-two mental impairment severity finding and in rejecting Dr. O'Connell's opinion.  Thus, the first part of the three-part test is met.  Plaintiff argues that the record is fully developed with no outstanding

issues, but her argument is premised on crediting not only Dr. O'Connell's opinion but also on crediting her subjective testimony. Given that the ALJ's reasons for rejecting her testimony were clear and convincing and supported by the record, her testimony is not an appropriate basis on which to conclude that the record is fully developed. Indeed, Plaintiff's credibility raises serious issues as to whether she is disabled, making an award of benefits inappropriate.

Additionally, while the ALJ improperly gave little weight to Dr. O'Connell's opinion, the opinion does not provide sufficient specific information to support a determination of disability. By stating that Plaintiff's somatic symptom disorder "may" impact her ability to function in a work setting because her pain "may" affect her ability to concentrate effectively, Dr. O'Connell suggests that there might be some limitation in concentration but it is unclear to what extent he believes she would be compromised. Finally, the record does not make clear if the outcome at step two will be different when Dr. O'Connell's opinion is considered. Accordingly, a remand for additional proceedings is appropriate in this case.

CONCLUSION

The Commissioner's decision is reversed and remanded for additional proceedings.

IT IS SO ORDERED.

Dated _____ December 16, 2019 _____.



_____
Marco A. Hernandez
United States District Judge



23 - OPINION & ORDER